## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE L. WILSON, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-CV-911 SRW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF

No. 17. Defendant filed a Brief in Support of the Answer. ECF No. 18. The Court has reviewed

the parties' briefs and the entire administrative record, including the transcripts and medical

evidence. Based on the following, the Court will affirm the Commissioner's decision.

## I.      Factual and Procedural Background

On March 30, 2020, Plaintiff Stephanie L. Wilson protectively filed applications for

disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, and supplemental security

income under Title XVI, 42 U.S.C. §§ 1381, *et seq.* with an alleged onset date of April 26, 2017.

Tr. 102, 120, 137, 300-19. Plaintiff's application was denied on initial consideration and

reconsideration. Tr. 103-18, 121-36, 138-88, 194-99, 202-08. On January 5, 2021, she requested

a hearing before an Administrative Law Judge ("ALJ"). Tr. 209-10.

1

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on June 3, 2021. Tr. 64-97. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") J. Stephen Dolan, M.A., C.R.C. *Id*. at 88-95. Upon Plaintiff's request, on October 19, 2021, Plaintiff appeared for a supplemental telephonic hearing for the purpose of presenting medical expert testimony from Dr. Ronald Kendrick, an orthopedic specialist. Tr. 35-63. During the supplemental hearing, Plaintiff and VE Dolan provided additional testimony. *Id.* On October 29, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 8-34. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 293-96. On July 8, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]" §

1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the

claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is

not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see whether the claimant has a severe impairment "which significantly limits claimant's

physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th

Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts

only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also*

20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the

impairment's medical severity. If the impairment meets or equals one of the presumptively

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of

age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, the Commissioner assesses whether the claimant retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§

416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do

despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

3

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record,

whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to

the ALJ's determinations regarding the credibility of testimony, as long as those determinations

are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d]

merely because substantial evidence also exists in the record that would have supported a

contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel.*

*Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2019. Tr. 13. Plaintiff has not

engaged in substantial gainful activity since August 31, 2019, the alleged onset date. Tr. 13-14.

Plaintiff has the severe impairments of "major depressive disorder alternatively diagnosed as

bipolar disorder, post-traumatic stress disorder (PTSD), degenerative disc disease of the lumbar

and cervical spine, and obesity." Tr. 14-15. Plaintiff does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. § 404, Subpart P, Appendix 1. Tr. 15-19. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a reduced range of light
> work as defined in 20 CFR 404.1567(b) and 416.967(b), in that she can lift/carry
> up to 20 pounds occasionally and 10 pounds frequently, and could stand/walk up
> to 6 hours and sit up to 6 out of 8 hours in a workday, with normal breaks. However,
> she can never climb ladders, ropes, or scaffolds nor work at unprotected dangerous
> heights or around unprotected dangerous machinery. She can occasionally climb
> ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should avoid jobs
> exposing her person to whole body vibration. She is limited to simple and/or

repetitive work with only occasional changes in work settings and routines. She must avoid jobs requiring close interaction with the public such as retail sales, customer service jobs, or phone solicitation type jobs. Also, she should avoid jobs requiring close interaction with coworkers such as tandem jobs, teamwork type jobs, no jobs requiring the person to get together with coworkers to determine work duties, work processes, work location or work tools. She is limited to jobs with only occasional interaction with supervisors, however, occasional, brief superficial contact with public or coworkers is tolerated. The [Plaintiff] is able to maintain adequate concentration, persistence[,] and pace in order to perform simple and/or repetitive work with only occasional changes in work settings and routines.

Tr. 19-25. The ALJ found Plaintiff is unable to perform any past relevant work as a fast food worker, sandwich maker, and cook helper. Tr. 21. The ALJ further found Plaintiff was born on March 27, 1989 and was 30 years old, which is defined as an individual age 18-49, on the alleged disability onset date. Tr. 25. Plaintiff has the equivalent of a high school education. *Id.*

The ALJ determined the transferability of job skills is not an issue in this case because the Plaintiff's past relevant work is unskilled. *Id.* Relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as housekeeping cleaner (*Dictionary of Occupational Titles* ("*DOT*") No. 323.687-014, with approximately 400,000 positions nationally), mail room clerk (*DOT* No. 209.687-026, with approximately 50,000 positions nationally), and cafeteria attendant (*DOT* No. 311.677-010, with approximately 50,000 positions nationally). Tr. 25-26 The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from August 31, 2019 through the date of his decision, issued on October 29, 2021. Tr. 26.

## IV.   Discussion

Plaintiff argues the ALJ erred by: (1) failing to consider her cubital tunnel syndrome and idiopathic neuropathy of the lower extremities as severe impairments; and (2) improperly

evaluating the opinion of medical expert, Dr. Ronald E. Kendrick, M.D., who testified at her October 19, 2021 supplemental hearing.

### A. Evaluation of Right Cubital Tunnel Syndrome and Idiopathic Neuropathy

The ALJ explicitly determined that Plaintiff's diagnosis of right cubital tunnel syndrome was not a severe impairment. At step two of the evaluation process, the ALJ explained, "EMG testing in fall 2020 suggested cubital tunnel syndrome [], but this diagnosis is not otherwise present in the record and the claimant has not received any treatment for such an ailment." Tr. 14 (citing Tr. 917). The ALJ was silent, however, as to whether Plaintiff's diagnosis of idiopathic peripheral neuropathy was a severe impairment or not.

Plaintiff argues the ALJ should have considered both her cubital tunnel syndrome and idiopathic peripheral neuropathy to be severe impairments. In support, Plaintiff cites to her June 3, 2021 hearing where she testified to experiencing neuropathy, including symptoms of extreme pain, lack of feeling in her legs, and difficulties using her right arm. ECF No. 17 at 5 (citing Tr. 52, 76-77, 82-84). Plaintiff contends her symptoms of cubital tunnel syndrome were severe and merited the addition of manipulative limitations to her RFC. Plaintiff further asserts that the ALJ's failure to evaluate her idiopathic peripheral neuropathy was erroneous because the record reflects diagnosis and treatment. *Id.* (citing Tr. 76-77, 84, 859-60, 1000, 1006-08, 1049-53).

The Commissioner opposes Plaintiff's assertions. ECF No. 18. First, the Commissioner argues the ALJ appropriately determined her cubital tunnel syndrome to be non-severe because the underlying medical record did not evidence treatment for the impairment. Second, the Commissioner contends the ALJ did not err by failing to specifically mention the diagnosis of idiopathic peripheral neuropathy in the determination because the ALJ considered it to be one of

her symptoms of degenerative disc disease or, in other words, her "nerve conduction testing took place within the context of her treatment for back pain." *Id.* at 7.

At step two of the evaluation process, an ALJ must determine if a claimant suffers from a severe impairment. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). *See also* 20 C.F.R. § 416.920(a)(4)(ii). To demonstrate an impairment is severe, a claimant must show he has (1) a medically determinable impairment or combination of impairments, which (2) "significantly limits [his] physical or mental ability to do basic work activities," without regard to age, education, or work experience. 20 C.F.R. §§ 416.920(a)(4)(ii), (c); 416.921(a). An impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). *See also Kirby*, 500 F.3d at 707 ("An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."). Although a claimant has "the burden of showing a severe impairment that significantly limited [his] physical or mental ability to perform basic work activities[,] . . . the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). *See also Kirby*, 500 F.3d at 708 ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard.").

As to Plaintiff's cubital tunnel syndrome, there is only one mention of the diagnosis within the underlying medical record. On September 22, 2020, Plaintiff complained of 10/10 bilateral neck, shoulder, and arm pain, as well as numbness and weakness in her upper extremities. Tr. 917. Plaintiff underwent EMG and NCV testing.[1] *Id.* The results were within

---

[1] EMG (electromyography) and NCV (nerve conduction) are "tests that measure the electrical activity of muscles and nerves" and help to determine if an individual has a muscle and/or nerve disorder. *See MedlinePlus*, National Library of Medicine, available at: https://medlineplus.gov/lab-tests/electromyography-emg-and-nerve-conduction-studies/ (last visited August 1, 2023).

"normal limits," except for "decreased conduction velocity of the right ulnar motor nerve at the elbow," which was "consistent with an ulnar nerve entrapment at the right cubital tunnel (Cubital Tunnel Syndrome)." *Id.* There is no further mention of cubital tunnel syndrome anywhere else in the medical record, other than for Plaintiff's own hearing testimony that it affects her ability to use her right hand and arm. *See* Tr. 82. Plaintiff does not cite to, and the Court cannot find, records where a physician attributed manipulative limitations due to this diagnosis or provided specific treatment for the impairment. Thus, the Court finds the ALJ did not err in determining her cubital tunnel syndrome to be a non-severe impairment because the record lacks evidence she was treated for the syndrome or it limited her functional capabilities in any significant way. *See* *Whitman v. Coleman*, 762 F.3d 701, 706 (8th Cir. 2014) (noting a lack of treatment may indicate a problem is not serious); *Buckner v. Astrue,* 646 F.3d 549, 557 (8th Cir. 2011) (diagnosis alone does not mean a claimant's impairment is "severe").

In contrast to the singular cubital tunnel syndrome reference in the record, Plaintiff's treatment notes repeatedly listed idiopathic peripheral neuropathy or polyneuropathy as one of her diagnoses. *See* Tr. 519, 524, 537, 748, 759, 780, 782-83, 809, 820, 841, 843-44, 859, 861-62, 867-68, 871-73, 875, 894, 1000, 1006-08, 1156, 1221, 1329, 1335, 1444, 1493, 1523, 1529, 1534. However, the ALJ did not include an explicit finding of whether Plaintiff's idiopathic peripheral neuropathy was severe, non-severe, or not medically determinable. "Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process." *Elfrink v. Kijakazi*, 2022 WL 4355194, at *4 (E.D. Mo. Sept. 20, 2022). Moreover, the United States Court of Appeals for the Eighth Circuit has held that an ALJ's "failure to list a specific impairment at step

9

two is not an error unless the impairment is 'separate and apart' from the other listed

impairments." *Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018)

(citing Gragg v. Astrue, 615 F.3d 932, 939 (8th Cir. 2010)).

The Commissioner argues the ALJ did not err because he considered Plaintiff's

idiopathic peripheral neuropathy to be a symptom of her degenerative disc disease. The Court

agrees with Commissioner and finds that her idiopathic peripheral neuropathy was not 'separate

and apart' from her degenerative disc disease, which the ALJ did find to be a severe impairment

affecting her RFC.

The ALJ addressed the injuries Plaintiff sustained to her back after she slipped on ice in

December of 2019. Tr. 21-25. Notably, the ALJ began his discussion of Plaintiff's severe spinal

impairments by first referencing her hearing testimony in which she specifically described her

neuropathy diagnosis to cause chronic pain, numbness, and pain radiating down her legs. Tr. 20,

52. Prior to the fall, Plaintiff stated she was able to lift up to 80 pounds and had no issues with

strength, pain, or numbness. Tr. 21. On March 23, 2020, Plaintiff visited Dr. Joseph Yazdi who

found, "She was asymptomatic prior to the accident. It is my [treating physician] opinion that the

fall caused her symptoms." Tr. 1526-27.

Although the ALJ did not use the word 'neuropathy' in the determination, he cited to

specific medical records which identified Plaintiff's idiopathic peripheral neuropathy diagnosis

as one of four spinal problems that were caused by the slip and fall. Tr. 21 (citing Tr. 1526,

1528-29, 1531). Along with neuropathy, Plaintiff was indicated to suffer from arthropathy of

spinal facet joint disorder, low back pain, and cervical spine pain. Tr. 1526, 1528-29, 1531.

Consequently, the ALJ found Plaintiff to have the severe impairment of degenerative disc

disease and explicitly described her symptoms to include "pain, weakness, and fatigue," Tr. 24,

which encompassed her self-reported symptoms of neuropathy. Thus, as the Commissioner

argues, it is evident from the determination that the ALJ intended to include all of Plaintiff's

spinal issues into one severe impairment defined as "degenerative disc disorder."

In addressing similar points of error as argued by Plaintiff in the instant case, this Court

has upheld an ALJ's choice not to identify neuropathy as an additional severe impairment but,

instead, consider it as a symptom of a more overarching severe impairment. *See Whitworth v.

Saul*, 2019 WL 4542864, at *4 (E.D. Mo. Sept. 18, 2019) (finding the ALJ did not err in

concluding that plaintiff's lumbar stenosis was not a severe impairment because "the ALJ

considered all spine diagnoses—including lumbar stenosis—*as part of a more broadly defined

disorder, degenerative disc disease*") (emphasis added); *Allred v. Kijakazi*, 2021 WL 4399462, at

*6 (E.D. Mo. Sept. 27, 2021) (finding no error when the ALJ did not identify claimant's diabetic

neuropathy as a severe impairment because he found claimant's diabetes was a severe

impairment and "considered [claimant's] neuropathy in his RFC analysis including findings of

decreased sensation").

Even if the ALJ erred in not specifically designating neuropathy as a separate severe

impairment, the error is harmless because he considered the symptoms it caused in other steps of

the Social Security evaluation process. *See DeGroot v. Berryhill*, 2019 WL 1316964, at *7 (E.D.

Mo. Mar. 22, 2019) ("Where an ALJ errs by failing to find an impairment to be severe, such

error is harmless if the ALJ finds the claimant to suffer from another severe impairment,

continues in the evaluation process, and considers the effects of the impairment at the other steps

of the process") (citation omitted).

Here, the ALJ considered that Plaintiff experienced numbness in her extremities; legs that

can feel like "jelly;" chronic pain and weakness; reduced range of motion; a limping gait; and

tenderness in her cervical and lumbar spine. Tr. 20-22. The ALJ summarized imaging and clinical findings that corroborated Plaintiff's complaints. Tr. 21, 634 (imaging showing degenerative disc disease and stenosis); 699 (imaging showing disc bulge, annular tear, and stenosis). The ALJ then discussed, in great detail, the extensive treatment Plaintiff underwent to reduce the symptoms occurring in her spinal region, including physical therapy, facet blocks, pain medication, chiropractic assistance, epidural and SI joint injections, and placement of a permanent spinal stimulator. Tr. 21-22, 1000-02, 1006, 1492-93, 1526, 1528, 1529, 1531, 1494-1639. Because the decision demonstrates that the ALJ considered all the evidence related to Plaintiff's spinal conditions as a whole, including her self-reported neuropathy symptoms, the Court finds that any possible error associated with the failure to designate neuropathy as an additional severe impairment was harmless. *See, e.g.*, *Greene v. Astrue*, 2011 WL 2472556 (E.D. Mo. June 21, 2011) (noting a failure to consider fibromyalgia as a severe impairment is not significant where there was minimal difference between the functional symptoms associated with fibromyalgia and those conditions the ALJ considered severe). In the instant case, there was no functional difference between the diagnosis of neuropathy and the categorization of Plaintiff's overall spinal conditions as degenerative disc disease.

Thus, the Court finds no legal error in the ALJ's decision to not include Plaintiff's cubital tunnel syndrome and idiopathic peripheral neuropathy as severe impairments. These determinations by the ALJ are supported by substantial evidence on the record as a whole, and the Court will not remand the decision on these grounds.

### B.  Evaluation of Expert Testimony

Plaintiff argues the ALJ erred by finding Dr. Ronald E. Kendrick's persuasive, but not including limitations within the RFC of regular recurring absences once per month and unscheduled breaks during the workday. ECF No. 17 at 8.

Dr. Kendrick was a non-examining medical expert who provided testimony at Plaintiff's October 19, 2021 Supplemental Hearing. Tr. 40-49. Dr. Kendrick described Plaintiff's medical diagnoses and opined she could perform a reduced range of light work. Tr. 41-42. Dr. Kendrick indicated that if she was having a "particularly bad day, she probably couldn't show up for work." Tr 43. When asked about the frequency one could expect Plaintiff to be absent, Dr. Kendrick indicated it was "totally impossible to predict how often that would occur." *Id.* When asked if it was "possible" for her to have more than one "bad day" per month, he agreed it could be possible, but continued to maintain that any prediction would be purely speculative. Tr. 44-45. Dr. Kendrick also testified that it was impossible to predict how often she would need to take extra breaks. Tr. 46.

In reviewing the testimony and opinion of Dr. Kendrick, the ALJ provided a detailed summary and analysis, as follows:

> The testimony [of] Dr. Kendrick . . . was also considered. Dr. Kendrick reviewed the entirety of the medical evidence, with the exception of the final Exhibit B23F,[2] but a summary of that information was provided to him at the beginning of the hearing. This expert relayed the record [and] confirmed the claimant suffered from severe impairments of obesity, lumbar degenerative disc disease without stenosis, and disc protrusions from C3-C6 with compression of the C5 nerve on the right, providing citations for these conclusions. He also observed her spinal stimulator implant procedure was helpful to her. Dr. Kendrick did not find her conditions met or equaled any listing, but opined the record supported physical limitations in her abilities to perform work-related tasks. Specifically, Dr. Kendrick concluded she should be limited to lifting/carrying and standing/walk[ing] at the light exertional level, should not climb ladders, ropes, or

---

[2] These records refer to the placement of a permanent spinal stimulator and related subsequent follow up appointments. *See* Tr. 1494-1639.

scaffolds or have exposure to dangerous moving machinery or other hazards nor vibration, but could occasionally climb ramps and stairs. He further opined the record did not support any limits relating to her upper extremities. Although Dr. Kendrick stated she may have "bad days" during which her chronic pain could prevent her from working, he testified (several times) that it would be impossible to predict how often such days would occur. However, he did relay that it was possible she may experience more than one "bad day" in a month, and that she could possibly have this occur in more than one month. The representative posed some additional questions to Dr. Kendrick, and he was able to confidently explain why she did not meet a listing, including citing to the record where the claimant apparently reported almost 100% relief of her pain after placement of a spinal cord stimulator. The representative also asked Dr. Kendrick if the imaging and objective findings, coupled with claimant's obesity, provided support for her subjective complaints of pain. Dr. Kendrick responded to this line of questioning several times by essentially indicating "pain is pain" and it was real to her, but also described her condition as a "garden variety" that many people may have but may never see a doctor. Dr. Kendrick ultimately agreed that there were objective abnormalities/findings that provided a basis for the claimant's subjective pain complaints. He also conceded the claimant's pain could impact her ability to focus and concentrate, but could not quantify this given he felt it was too speculative to do so. Dr. Kendrick's opinion is persuasive, as he supported his conclusions with detailed explanations and citations to the record as a whole, as well as the claimant's hearing testimony that the spinal cord stimulator has been largely successful in controlling her pain thus far.

Tr. 23-24.

The Court cannot find the ALJ erred by not including limitations in the RFC of at least one absence per month and unscheduled breaks. Dr. Kendrick does not testify that such limitations should be included. To the contrary, Dr. Kendrick explicitly declined to predict whether she would be absent one or more times per month or if she would need unscheduled breaks. Dr. Kendrick explained that his hesitation was because chronic pain is "so variable that it's totally impossible to predict" without a "crystal ball." Tr. 43. Because Dr. Kendrick expressed professional discomfort in speculating about the frequency plaintiff would need to be absent from work or take unscheduled breaks, it was appropriate for the ALJ to not include such limitations in the RFC. This is especially true considering that nowhere in the record does a

14

medical provider or consultant opine that Plaintiff would require irregular, spontaneous breaks, or more than one absence per month.

Thus, the Court will decline to remand this action based on the ALJ's decision to find Dr. Kendrick's expert testimony persuasive and not include any absentee or break related limitations in Plaintiff's RFC.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Stephanie L. Wilson's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 3rd day of August, 2023.


STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE